# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIELIS SANTANA-RIVAS, | : | NO. 3:25-cv-01896 |
| Petitioner, | : | |
| | : | (WILSON, D.J.) |
| v. | : | |
| | : | (CAMONI, M.J.) |
| WARDEN OF CLINTON | : | |
| COUNTY CORRECTIONAL | : | |
| FACILITY, *et al.* | : | |
| Respondents. | : | |

## **REPORT AND RECOMMENDATION**

Indefinite, unreviewable executive detention is anathema to a functional democracy. Respondent[1] argues that Petitioner is subject to mandatory detention, of no specified duration, and that no court can review that detention for any reason. But where "a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008). Because habeas corpus is a core constitutional guarantee, placing a check on what would otherwise be unfettered executive authority to restrain an individual's liberty, "the writ must be effective." *Id.* And, because Petitioner has satisfied her

---

[1] "Respondent" refers to the Warden of Clinton County Correctional Facility, as explained in Section III.B, *infra*.

burden to show that the government is detaining her unlawfully, the undersigned respectfully recommends that the Court grant the writ of habeas corpus and order her released immediately.

## I.    BACKGROUND

The facts underlying this petition are not in dispute. Petitioner, Marielis Santana-Rivas, is an immigration detainee currently held at the Clinton County Correctional Facility in McElhattan, Pennsylvania, and she has filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Doc. 1. Petitioner is a native and citizen of the Dominican Republic. *Id.* ¶ 16; Docs. 12-3 at 2; 1-4 at 5. She entered the United States without inspection on October 21, 2022. Docs. 1 ¶ 2; 12-3 at 2; 1-4 at 5. On that same day, she surrendered to immigration authorities near Del Rio, Texas. Docs. 1 ¶ 23; 1-4 at 6. She was released on her own recognizance under 8 U.S.C. § 1226(a). Docs. 1 ¶ 23; 12 at 9.

In August 2023, Trenton Police officers arrested Petitioner and charged her with aggravated assault, stemming from an incident she claims was related to abuses she suffered while engaged in commercial sex work. Docs. 12 at 9; 1 ¶ 24. One year later, she entered a guilty plea pursuant to a plea agreement that included pretrial intervention,

probation, and community service. Doc. 1 ¶ 25. Upon release, however, Immigration and Customs Enforcement ("ICE") took her into custody on a detainer. *Id*; Resp.'s Br., Doc. 12 at 10. In the meantime, while still detained on the New Jersey charges, Petitioner missed an immigration hearing, so a United States Immigration Judge ("IJ") ordered her removed to the Dominican Republic in absentia. Doc. 12 at 10.

Petitioner was initially lodged at Moshannon Valley Processing Center. *Id.*; Docs. 12-7; 1 ¶ 26. She sought and was denied release on bond under 8 U.S.C. § 1226(c), because the charge she had pled guilty to in New Jersey was a crime of moral turpitude, rendering detention mandatory. Docs. 1 ¶ 31; 12 at 11. In April 2025, Petitioner was transferred to Clinton County Correctional Facility, though she remained in ICE custody. Docs. 1 ¶ 32; 12 at 10; 12-9. At some point, she obtained *pro bono* counsel who assisted her in vacating the removal order, applying for a "T visa" (designed for victims of trafficking) and for asylum, and to withdraw her guilty plea in New Jersey. Docs. 1 ¶¶ 26, 34; 12 at 10. The New Jersey court granted the latter motion in June 2025, and Petitioner instead entered a guilty plea to a misdemeanor simple assault charge. Docs. 1¶ 34; 12 at 10.

No longer subject to mandatory detention under 8 U.S.C. § 1226(c), Petitioner moved again for release on bond. Docs. 1¶ 35; 12 at 12. On July 8, 2025, an IJ held a bond hearing. Doc. 1 ¶ 35-36. At that hearing, the Department of Homeland Security ("DHS") did not argue that Petitioner was subject to mandatory detention under any authority, but only that she presented a danger to the community because of her criminal conduct. Docs. 1 ¶ 36; 12 at 12; 1-15 at 2. The IJ rejected DHS's argument, finding that the assault for which Petitioner was prosecuted was an isolated incident related to her "circumstances as a sex worker," and that she represented neither a danger nor a flight risk. Docs. 1-14; 1-15 at 2-3. On July 8, 2025, the IJ ordered her released on bond. Doc. 1-14.

On that same date, DHS issued "Interim Guidance Regarding Detention Authority for Applicants for Admission," addressed to "All ICE Employees." Doc. 1-18. Employees were notified that DHS, in coordination with the Department of Justice, had "revisited its legal position on detention and release authorities." Doc. 1-18 at 1. This new legal position asserted that all aliens present in the United States who had not been admitted or who arrive in the United States are considered

"applicants for admission," and all such aliens are subject to mandatory detention under 8 U.S.C. § 1225(b). *Id.*

Meanwhile, Petitioner remained detained. DHS had filed a notice of intent to appeal, invoking an automatic stay of the IJ's order of release. Docs. 1 ¶ 37; 12 at 12. On July 15, 2025, DHS filed a motion for reconsideration with the IJ who had ordered release, arguing for the first time that Petitioner was subject to mandatory detention under the Immigration and Nationality Act ("INA") § 235(b)(2) (8 U.S.C. § 1225(b)(2)) as an "applicant for admission." Doc. 1-17 at 1-3. DHS also continued to contend that Petitioner was "undeniably a danger to persons," with a "serious propensity towards violence." *Id*. at 4.

Meanwhile, on July 16, 2025, the IJ denied Petitioner's applications for relief and ordered her removed, and she appealed. Docs. 1 ¶ 39; 12 at 11. On July 21, 2025, DHS filed its notice of appeal of the bond decision to the Board of Immigration Appeals ("BIA"), depriving the IJ of jurisdiction over the pending motion for reconsideration. Doc. 1 ¶ 40. Again, DHS argued that Petitioner was a danger and a flight risk, but asked in a footnote that, should the BIA uphold the IJ's findings on those

fronts, the case should be remanded to consider the § 1225(b)(2) argument for mandatory detention. Doc. 1-21 at 6 n.1.

On September 5, 2025, BIA decided *In re Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), which held, for the first time, that Immigration Judges lack authority to consider requests for bond from any "applicant for admission,"—construed to include all aliens, like Petitioner, within the United States without permission—because they are subject to mandatory detention under § 1225(b). *Hurtado*, 29 I. & N. Dec. at 229. The BIA reached this conclusion despite acknowledging the long-established practice of applying § 1226 to aliens already present in the country after having entered without inspection. *Id.* at 226 n.6.

Two weeks after *Hurtado* was decided, the BIA sustained DHS's appeal of Petitioner's release order, holding that the *Hurtado* decision applied in her case and the IJ had no authority to entertain a motion for bond. Doc. 1-22 at 3-4.

Petitioner describes the conditions at Clinton County Correctional Facility, where she is housed with criminal detainees, as "even worse

than Moshannon [Valley Processing Center]." Pet.'s Decl., Doc. 1-3 at 3.[2] She describes poor quality food, no outdoor recreation, and cost-prohibitive telephone calls and commissary items, including basic toiletries. *Id.* at 4. She cannot call her children in the Dominican Republic because the facility lacks international calling options, unlike at Moshannon. *Id.* at 5. Petitioner, who reports adverse mental health symptoms (Doc. 1 ¶ 28), avers that the Correctional Facility, unlike Moshannon, provides poor psychological care. Doc. 1-3 at 3.

Fifteen months after being taken into DHS custody, Petitioner remains incarcerated at Clinton County Correctional Facility pending her administrative appeal. Doc. 1 ¶ 1. She filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on October 9, 2025. Doc. 1. The parties have fully briefed the issues, and the petition is ripe. Docs. 1, 12, 14.

## II.    JURISDICTION

As explained further below, this Court has jurisdiction under 28 U.S.C. § 2241(c)(3) to grant a writ of habeas corpus to a person in custody

---

[2] Petitioner submitted a Declaration containing asserted facts, which DHS did not contest or refute in its brief. Doc. 1-3; *see generally* Doc. 12.

in violation of the Constitution, laws, or treaties of the United States. *Demore v. Kim*, 538 U.S. 510, 517 (2003). "[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004), citing U.S. Const., art. I, § 9, cl. 2. Petitioner was detained within this Court's jurisdiction and by a custodian within this Court's jurisdiction when she filed the Petition, and she asserts that her continued detention violates due process. Therefore, this Court has jurisdiction over her claims. *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (per curiam) (noting jurisdiction for "core habeas petitions" lies in the district of confinement).

District Courts also have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331, and the ability to grant equitable relief in the absence of an exclusive statutory review scheme. *Semper v. Gomez*, 747 F.3d 229, 242 (3d Cir. 2014). The district court has referred this case to the undersigned pursuant to 28 U.S.C. § 636, which authorizes, among other things, the undersigned Magistrate Judge to prepare reports and recommendations on potentially dispositive matters.

## III.   ANALYSIS

Petitioner argues that DHS's newly instituted application of mandatory detention under § 1225(b)(2), as set forth in *Hurtado*, violates the plain language of the INA. Doc. 1 ¶¶ 51-60. Alternatively, she argues that even if § 1225(b)(2) mandatory detention properly applies to her, her detention has become unconstitutionally prolonged. *Id.* ¶¶ 61-68. Respondent counters first that this Court lacks jurisdiction over Petitioner's claims pursuant to 8 U.S.C. §§ 1252(g) and (b)(9), and second that detention under § 1225(b)(2)(A) is proper here. Doc. 12 at 14-19. Petitioner has "the burden of sustaining [her] allegations by a preponderance of evidence." *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

For the reasons set forth below, the undersigned respectfully recommends that the Court reject Respondent's arguments as to both jurisdiction and the lawfulness of detention, and order Petitioner released.

### A.    This Court has jurisdiction to review Petitioner's detention

Respondent contends that the INA strips jurisdiction from district courts over challenges to administrative detention, and therefore this

Court cannot entertain this petition. A plain reading of the statutes does not support Respondent's argument, as the Supreme Court has agreed. Even if the statutes could be read to purport to preclude review of this petition, Respondent fails to address how such an outcome would not run afoul of the Suspension Clause.

> Respondent first argues that:

> Section 1252(g) specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title."

Doc. 12 at 14.

Nothing in § 1252(g) precludes district courts from exercising habeas jurisdiction over the detention of individuals in administrative immigration proceedings. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)

(emphasis in original).[3] Petitioner does not ask this Court to review the decision or action to commence immigration proceedings against her, nor to adjudicate her case, nor to impose or eventually execute a removal order. Petitioner only seeks review of her ongoing detention, a heartland habeas corpus claim. Section 1252(g) does not prevent the Court from exercising jurisdiction under § 2241 over such a claim.

Respondent next argues that jurisdiction is also barred by 8 U.S.C. § 1252(b)(9):

> Second, under § 1252(b)(9), "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. *See* 8 U.S.C. § 1252(b)(9); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of all [claims arising from deportation proceedings]" to a court of appeals in the first instance.

Doc. 12 at 16.

---

[3] Respondent cites to *Reno* (Doc. 12 at 16), but ignores the Court's limited reading of § 1252(g), and does not attempt to square the case with their contention that the provision strips jurisdiction over far more than the "three discrete actions" specified by the Court.

Again, on its face, Section 1252(b)(9) does not purport to deprive the courts of jurisdiction over petitions like the one before the Court that seek a writ of habeas corpus and challenge the legality of detention. Petitioner does not ask this Court to interfere with any "action taken to remove" her from the United States. *See* Traverse, Doc. 14 at 16-17. She challenges only the basis for, and duration and conditions of, her continuing detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018) ("For present purposes, it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.").

Respondent points to the Supreme Court's "guidance" in *Jennings* to support their position:

> The Court found that "§ 1252(b)(9) [did] not present a jurisdictional bar" in situations where "respondents . . . [were] not challenging the decision to detain them in the first place." [*Jennings*, 583 U.S.] at 294–95. In this case, Petitioner does challenge the government's decision to detain her in the first place. Though Petitioner may attempt to frame this challenge as one relating to detention authority, rather than a challenge to DHS's

> decision to detain her pending his removal proceedings
> in the first instance, such creative framing does not
> evade the preclusive effect of § 1252(b)(9).

Doc. 12 at 20. But Petitioner does not, in fact, challenge "the government's decision to detain her in the first place."[4] She challenges the government's *continuing* detention of her. Nowhere does she contend that her arrest by DHS was unlawful, nor that her initial detention was illegal. Respondent's own "creative framing" misses the mark and misconstrues both Petitioner's arguments and *Jennings*.

As the Supreme Court explained, "It may be argued that" Petitioner's claims regarding detention arise from deportation proceedings "in the sense that if those actions had never been taken, [she] would not be in custody at all. But this expansive interpretation of § 1252(b)(9) would lead to staggering results." *Jennings*, 583 U.S. at 293. The Court reviewed certain claims that might be said to "arise from" removal proceedings under the construction the Respondent offers here, including conditions of confinement, and found that "cramming judicial

---

[4] Respondent's argument on this point falls particularly flat because Petitioner was not detained "in the first place" under § 1225, the provision she challenges, but under § 1226. She has not argued that her arrest or detention under § 1226(c), before her aggravated assault conviction was vacated, were unlawful.

review of those questions into the review of final removal orders would be absurd." *Id.*

> Interpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Id.*

Indeed, the "staggering results" of such an interpretation of § 1252(b)(9) are easy to imagine. Under such a regime of unreviewable, indefinite executive detention, any person could be taken into custody and held for any amount of time, without recourse. If, as the Respondent contends, the government need only recite that it detains a person subject to deportation proceedings to preclude the courts from reviewing that detention, then the executive has unlimited authority to detain anyone, for any amount of time, without review. And if the only review becomes available when a final order is entered, the government could simply refrain from issuing a final order, and detention could last indefinitely. Even if a final order were to eventually issue, review of detention at that point would be meaningless, as the *Jennings* Court recognized.

But that is precisely why the writ of habeas corpus exists, and why the Founders guaranteed the availability of the writ, which can only be suspended as specified in the Suspension Clause. U.S. Const., Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); *see also Boumediene*, 553 U.S. at 732 ("[T]he constitutional privilege of habeas corpus [is] not to be withdrawn except in conformance with the Suspension Clause[.]").

Confronted with a similar argument by the government that indefinite executive detention was unreviewable by the courts because of a jurisdiction-stripping statute, the Supreme Court recalled the words of Alexander Hamilton, who summed up the importance of the writ of habeas corpus to the preservation of a limited government:

> [T]he practice of arbitrary imprisonments, have been, in all ages, the favorite and most formidable instruments of tyranny. The observations of the judicious Blackstone . . . are well worthy of recital: "To bereave a man of life . . . or by violence to confiscate his estate, without accusation or trial, would be so gross and notorious an act of despotism as must at once convey the alarm of tyranny throughout the whole nation; but confinement of the person, by secretly hurrying him to jail, where his sufferings are unknown or forgotten, is a less public, a less striking, and therefore a more dangerous engine of arbitrary government." And as a remedy for this fatal evil he is everywhere peculiarly emphatical in his

encomiums on the habeas corpus act, which in one place he
calls "the bulwark of the British Constitution."

*Boumediene*, 553 U.S. at 744, quoting The Federalist No. 84.

As the Court then explained, "In our own system the Suspension

Clause is designed to protect against these cyclical abuses."

> The Clause protects the rights of the detained by a means
> consistent with the essential design of the Constitution. It
> ensures that, except during periods of formal suspension, the
> Judiciary will have a time-tested device, the writ, to maintain
> the 'delicate balance of governance' that is itself the surest
> safeguard of liberty. The Clause protects the rights of the
> detained by affirming the duty and authority of the Judiciary
> to call the jailer to account.

*Id.* at 745, quoting *Hamdi*, 542 U.S. at 536.

Thus, even if the Respondent's reading of the statutes was correct,

habeas jurisdiction would still lie because the elimination of jurisdiction

under the circumstances presented here would violate the Suspension

Clause.

To determine whether a jurisdiction-stripping statute violates the

Clause, the Court applies a two-step analysis. *Osorio-Martinez v. Att'y*

*Gen. U.S.*, 893 F.3d 153, 166 (3d Cir. 2018), citing *Boumediene*, 553 U.S.

at 723. The Court first determines "whether a given habeas petitioner is

prohibited from invoking the Suspension Clause due to some attribute of

the petitioner or to the circumstances surrounding his arrest or detention." *Id.*, citing *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 445 (3d Cir. 2016). Then, if the petitioner is not prohibited from invoking the Suspension Clause, we "turn to the question whether the substitute for habeas is adequate and effective to test the legality of the petitioner's detention." *Id.*, quoting *Castro*, 835 F.3d at 445.

In assessing the first factor, the *Boumediene* Court considered three sets of factors to determine whether detainees at Guantanamo Bay may seek the writ: "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." 553 U.S. at 766. Like the "status of the detainees" at Guantanamo Bay, Petitioner's "status" as a detainee in DHS custody, despite an order granting release by DHS's own IJ, "militates against denial of the writ." *Osorio-Martinez*, 893 F.3d at 166 n.10. Similarly, "Petitioner [was] not apprehended or detained outside United States territory, nor are there serious practical obstacles to permitting habeas corpus proceedings besides the kind of 'incremental

expenditure of resources' that the Supreme Court deemed not dispositive to the question of granting the writ." *Id.*, citing *Boumediene* and *Johnson v. Eisentrager*, 339 U.S. 763, 777 (1950). Thus, the first step in the *Boumediene* test weighs in favor of Petitioner, and the Court moves to step two.

With respect to the second step in the analysis, the Court of Appeals for the Third Circuit has recognized:

> In *Boumediene*, the Supreme Court took care to explain that habeas review is "most pressing" in the case of executive detention, as opposed to where "relief is sought from a sentence that resulted from the judgment of a court of record." For the writ to be effective in such a case, "[t]he habeas court must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." More specifically, the Court declared it "uncontroversial . . . that the privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law."

*Osorio-Martinez*, 893 F.3d at 177; *see also INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."). These are the exact circumstances now before the Court: Petitioner is subject to executive detention, not to detention resulting from a judgment of a court

of record. Thus, any proposed substitute for habeas review must be robust enough to satisfy the "historical core" purposes of the writ.

Here, even under Respondent's reading of the statutes, "the INA's jurisdiction-stripping provisions do not provide even this 'uncontroversial' baseline of review." *Osorio-Martinez*, 893 F.3d at 177. Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this title shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United States Code, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

And Section 1252(g) provides for no substitute review but only precludes any court from reviewing the Attorney General's decisions or actions to "commence proceedings, adjudicate cases, or execute removal orders."

The statutes Respondent relies on to argue that the Court lacks jurisdiction offer no adequate or effective substitute for habeas "to test the legality of the petitioner's detention," (*Osorio-Martinez*, 893 F.3d at 166), and Respondent offers no other alternative substitutes. Thus, what

Respondent proposes would be an unconstitutional suspension of the writ of habeas corpus. To be clear, a plain reading of the statutes does not support Respondent's reading of them; nothing in 8 U.S.C. §§ 1252(g) or (b)(9) purports to eliminate jurisdiction of this Court over a petition for writ of habeas corpus challenging only the legality, duration, and conditions of detention, as explained by the Supreme Court in *Jennings* and *Reno*. But even if the Court agreed with Respondent as to the interpretation of those two provisions, they would be unconstitutional as applied to the Petitioner. *See Osorio-Martinez*, 893 F.3d at 178 (holding that a different provision under § 1252 violated the Suspension Clause as applied to petitioners and that the District Court therefore retained jurisdiction to consider petitioners' claims).

Accordingly, this Court should exercise its jurisdiction and consider the petition.

**B.    The Court should grant the Petition and order Petitioner released immediately.**

Petitioner contends that DHS's newly instituted application of mandatory detention under § 1225(b)(2) violates the INA, or, alternatively, that even if she was properly detained, her detention has become unconstitutionally prolonged. Doc. 1   ¶¶ 51-60,   61-68.

Respondent disagrees. Doc. 12 at 13. Under either analysis, the undersigned concludes that Respondent's detention of Petitioner is unlawful.

At the outset, the government asserts that the only proper respondent in this case is the Warden of Clinton County Correctional Facility and asks the Court to dismiss from the action the Attorney General, the Secretary of Homeland Security, and two Immigration and Customs Enforcement officials. Doc. 12 at 1 n.1. Petitioner asserts that the other respondents must remain to give effect to the relief she seeks. Doc. 14 at 18-19.

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004), first quoting 28 U.S.C. § 2242; and then citing 28 U.S.C. § 2243 (providing that "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"). "The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition." *Id*. Under what is called the "immediate custodian rule,"

the warden or superintendent of the prison where the petitioner is held is considered the immediate custodian for purposes of a habeas action. *Id.* at 442. "The logic of this rule rests in an understanding that 'the warden . . . has day-to-day control over the prisoner and . . . can produce the actual body.'" *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021), quoting *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994). Here, Petitioner is detained at the Clinton County Correctional Facility. Thus, only the Warden of the Clinton County Correctional Facility is the proper respondent. Regardless, by detaining a federal prisoner on behalf of ICE, the Warden acts as an agent of the federal government, and the government will be bound by whatever judgment and order this Court enters.

### 1.    *Section 1225 has no application to Petitioner.*

Petitioner first argues that Respondent incorrectly applied § 1225 to hold her in mandatory detention without bond, and that she should instead be detained pursuant to § 1226, with the possibility of release on bond. Doc. 1 ¶ 60.

Section 1225 of Title 8 of the U.S. Code is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens;

referral for hearing."[5] Section 1225(a)(1) defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." The remaining provisions under subsection (a) deal with "stowaways," inspection of aliens, including alien crewmen, seeking admission to the United States, withdrawal of applications for admission with immediate departure, and the compulsion of statements during admission interviews. *See* § 1225(a)(2)–(5). Section 1225(b)(2) states that if an examining immigration officer determines that an alien "seeking admission" is not clearly and beyond a doubt entitled to be admitted, the

---

[5] The title and preamble of an act can provide insight into its meaning. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 34, at 218 (2012) (Preambles "set forth the assumed facts and the purposes that the majority of the enacting legislature . . . had in mind, and these can shed light on the meaning of the operative provisions that follow"); *Almendarez-Torres v. United States*, 523 U.S. 224, 234, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947) ("We also note that 'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute."); *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

alien shall be detained for removal proceedings under § 1229a. Thus, on its face, § 1225 applies only at the borders or at other ports of entry, where individuals are "seeking admission" to the country. *See Del Cid v. Bondi*, No. 25-304, 2025 U.S. Dist. LEXIS 209136, at *39-40 (W.D. Pa. Oct. 23, 2025), quoting *Jennings*, 583 U.S. at 287-88 ("[T]he Supreme Court has tethered § 1225 to 'the Nation's borders and ports of entry,' noting that aliens detained pursuant to those provisions are typically detained during removal proceedings.")

Respondent contends that Section 1225(b)(2) requires the detention of Petitioner until the conclusion of removal proceedings because, as set forth in internal DHS guidance and *Hurtado*, the government now views all aliens present without parole in the United States as "applicants for admission," who are actively "seeking admission." Doc. 12 at 3. Nearly every court to have considered this reading of the statute—and there are many—has rejected it outright. *See, e.g., Belsai D.S. v. Bondi*, No. 25-3682, 2025 U.S. Dist. LEXIS 194262, at *13 (D. Minn. Oct. 1, 2025); *Quispe v. Crawford*, No. 25-1471, 2025 U.S. Dist. LEXIS 194070, at *9-15 (E.D. Va. Sept. 29, 2025); *Savane v. Francis*, No. 25-6666, 2025 U.S. Dist. LEXIS 194889, at *23-24 (S.D.N.Y. Sept. 28, 2025); *Zumba v.*

*Bondi*, No. 25-14626, 2025 U.S. Dist. LEXIS 190052, at *27-30 (D.N.J. Sept. 26, 2025); *Salazar v. Dedos*, No. 25-835, 2025 U.S. Dist. LEXIS 183335, *12-13 (D.N.M. Sept. 17, 2025); *Lepe v. Andrews*, No. 25-1163, 2025 U.S. Dist. LEXIS 187233, at *9-10 (E.D. Cal. Sept. 23, 2025); *Roman v. Noem*, No. 25-1684, 2025 U.S. Dist. LEXIS 186389, *12-13 (D. Nev. Sept. 23, 2025); *Reyes v. Lyons*, No. 25-4048, 2025 U.S. Dist. LEXIS 188085, at *3-6 (N.D. Iowa Sept. 23, 2025); *Singh v. Lewis*, No. 25-96, 2025 U.S. Dist. LEXIS 185696, at *7 (W.D. Ky. Sept. 22, 2025); *Barrera v. Tindall*, No. 25-541, 2025 U.S. Dist. LEXIS 184356, at *14 (W.D. Ky. Sept. 19, 2025); *Hasan v. Crawford*, No. 25-1408, 2025 U.S. Dist. LEXIS 184734, at *17-18 (E.D. Va. Sept. 19, 2025); *Vazquez v. Feeley*, No.25-1542 2025 U.S. Dist. LEXIS 182412, at *37-38 (D. Nev. Sept. 17, 2025); *Cortes v. Noem*, No. 25-2677, 2025 U.S. Dist. LEXIS 181582, at *6 (D. Colo. Sept. 16, 2025); *Santos v. Noem*, No. 25-1193, 2025 U.S. Dist. LEXIS 183412, at *9-13 (W.D. La. Sept. 11, 2025); *Perez v. Kramer*, No. 25-3179, 2025 U.S. Dist. LEXIS 177428, at *7 (D. Neb. Sept. 11, 2025); *Reyes v. Raycraft*, No. 25-12546, 2025 U.S. Dist. LEXIS 175767, at *15-20 (E.D. Mich. Sept. 9, 2025); *Hinestroza v. Kaiser*, No. 25-7559, 2025 U.S. Dist. LEXIS 176133, at *4 (N.D. Cal. Sept. 9, 2025); *Jimenez v. FCI*

*Berlin, Warden*, No. 25-326, 2025 U.S. Dist. LEXIS 176165, at *12 (D.N.H. Sept. 8, 2025); *Jose J.O.E. v. Bondi*, No. 25-3051, 2025 U.S. Dist. LEXIS 166326, at *21 (D. Minn. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 25-2428, 2025 U.S. Dist. LEXIS 165015, at *20-27 (D. Md. Aug. 24, 2025); *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 U.S. Dist. LEXIS 169423, at *24-26 (E.D. Mich. Aug. 29, 2025); *Benitez v. Francis*, No. 25-5937, 2025 U.S. Dist. LEXIS 157214, at *22-23 (S.D.N.Y. Aug. 8, 2025).[6]

Every court within the Third Circuit that has considered this issue has likewise rejected Respondent's application of § 1225(b)(2) to individuals in circumstances like Petitioner's. *See, e.g., Soto v. Soto, et*

---

[6] Respondent cites to only two district court cases that accepted their argument. *Chavez v. Noem*, No. 25-2325, 2025 LEXIS 192940 (S.D. Cal. Sept. 24, 2025); *Lopez v. Trump*, No. 25-526, 2025 LEXIS 192557 (D. Neb. Sept. 30, 2025). These two cases have been cited by the government in other cases and consistently rejected as unpersuasive and flawed. *See, e.g., Orellana v. Noem*, No. 25-112, 2025 U.S. Dist. LEXIS 211065, at *8 (W.D. Ky. Oct. 27, 2025) (holdings of *Chavez* and *Vargas Lopez* are contrary to and fail to consider the overwhelming majority of cases across the country, fail to properly engage with the statutes, and conflict with other courts in their own districts). *Chavez* does not even deal with a habeas petition, but a motion for a temporary restraining order, presenting different legal theories than the instant case. *See* 2025 U.S. Dist. LEXIS 192940, at *2. In any event, these cases are not binding on this Court, are not persuasive in their reasoning, and represent a drop in the ocean of decisions rejecting their holdings.

*al.*, No. 25-16200, 2025 U.S. Dist. LEXIS 207818, at *15 (D.N.J. Oct. 22, 2025); *Lomeu v. Soto*, No. 25-16589, 2025 U.S. Dist. LEXIS 209240, at *20-23 (D.N.J. Oct. 23, 2025); *Zumba*, 2025 U.S. Dist. LEXIS 190052, at *2; *Smit Patel v. Almodovar*, No. 25-15345, 2025 U.S. Dist. LEXIS 212112, at *9 (D.N.J. Oct. 28, 2025); *Lopez v. Sec'y Kristi Noem*, No. 25-16890, 2025 U.S. Dist. LEXIS 218088, at *7-8 (D.N.J. Nov. 5, 2025); *Mboup v. Field Office Dir. of N.J. Immigr. & Customs Enf't*, No. 25-16882, 2025 U.S. Dist. LEXIS 216326, at *2 (D.N.J. Nov. 3, 2025); *Del Cid*, 2025 U.S. Dist. LEXIS 209136, at *34-36; *Castillo v. Lyons*, No. 25-16219, 2025 U.S. Dist. LEXIS 205664, at *2 (D.N.J. Oct. 10, 2025); *Buestan v. Chu*, No. 25-16034, 2025 U.S. Dist. LEXIS 211879, at *2 (D.N.J. Oct. 21, 2025); *Del Cid v. Bondi*, No. 25-304, 2025 U.S. Dist. LEXIS 209136, at *39-40 (W.D. Pa. Oct. 23, 2025); *see also C.B. v. Oddo*, No. 25-00263, 2025 U.S. Dist. LEXIS 208250, at *8 (W.D. Pa. Oct. 22, 2025) (alien originally detained "upon arrival" properly held under § 1225(b)(2)(A), but unduly prolonged detention without bond hearing violated due process).

The reasoning employed in these cases is comprehensive and persuasive. Particularly compelling here, courts have noted that Respondent's interpretation of the phrase "seeking admission" "violates

the rule against surplusage and negates the plain meaning of the text." *See*, *e.g.*, *Soto*, 2025 U.S. Dist. LEXIS 207818, at *9; *Martinez v. Hyde*, No. 25-11613, 2025 U.S. Dist. LEXIS 141724, at *6 (D. Mass. July 24, 2025); *Zumba*, 2025 U.S. Dist. LEXIS 190052, at *8; *Benitez*, 2025 U.S. Dist. LEXIS 157214, at *16. The phrase "seeking admission" in § 1225(b)(2)(A) necessarily connotes some affirmative, present-tense action. The verb "seeking" is a present participle, and the "present participle is used to signal present and continuing action." *Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.*, 48 F.4th 1298, 1307 (11th Cir. 2022); *see also*, *e.g.*, *D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 610 (5th Cir. 2023) ("The word 'providing,' used here as a present participle, most commonly describes a person who is currently providing services.") (emphasis in original); *United States v. Hull*, 456 F.3d 133, 145 (3d Cir. 2006) (Ackerman, Sr. Dist. J., sitting by designation, concurring) ("Congress's use of the present participle 'committing' connotes present, continuing action.").

The INA defines the term "admission" as, "with respect to an alien, the lawful entry of the alien into the United States after inspection and

authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Thus, the INA's own definition of the term "admission" supports the limited application of § 1225 to encounters with aliens along the borders and at ports of *entry*. Respondent contends that, because Petitioner has not been lawfully admitted to the country, she must be "seeking admission." Doc. 12 at 25. But there is no indication that Petitioner is presently "seeking admission" as defined in § 1101(a)(13)(A), that is, "lawful *entry* . . . into the United States[.]" Petitioner "'has already "entered" the country'— [she] is no longer seeking to enter the United States (lawfully or otherwise)." *Jimenez*, 2025 U.S. Dist. LEXIS 176165, at *22, citing *Benitez*, 2025 U.S. Dist. LEXIS 157214, at *19. And while Petitioner "has applied for asylum, that application does not seek "'lawful entry" to the United States, but [rather] a lawful means to remain here.'" *Id*.

As such, Respondent's argument that Petitioner is "seeking admission" under § 1225(b)(2)(A), despite taking no affirmative action, and despite already having entered the country years ago, is contrary to the plain, ordinary meaning of the words "seeking admission." "Seeking admission" clearly requires an act, currently underway, to enter a space from without, and not a static condition of one currently present within

that space. *See, e.g.*, *Zumba*, 2025 U.S. Dist. LEXIS 190052, at *23;

*Benitez*, 2025 U.S. Dist. LEXIS 157214, at *14.

> For example,
>
>> one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' . . . at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there."

*Soto*, 2025 U.S. Dist. LEXIS 207818, at *16-17, quoting *Benitez*, 2025

U.S. Dist. LEXIS 157214, at *21. Petitioner entered Judge Ho's

proverbial theater three years ago. She is not seeking admission ("lawful

entry") because she is already inside; she seeks only to be allowed to stay.

Respondent's reading of § 1225 also violates the rule against

surplusage. Removing the words "seeking admission" from

§ 1225(b)(2)(A) would not alter its meaning under Respondent's theory:

"[I]n the case of an alien who is an applicant for admission, if the

examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word of a statute" that Congress chose to include. *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023), quoting *Montclair v. Ramsdell*, 107 U. S. 147, 152 (1883).

Here, as in other cases, "Petitioner was not detained until more than a year after her initial encounter. At that point, it cannot be denied that she was 'already in the country,' after having 'effected an entry[.]'" *Martinez*, 2025 U.S. Dist. LEXIS 141724, at *21, first quoting *Jennings*, 583 U.S. at 289; and then quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Because Petitioner had already been residing in the country for more than two years when she was detained, she was not "seeking admission" at that time, and therefore, Section 1225(b)(2)(A) simply has no application to her case. *See, e.g.*, *id.*; *Benitez*, 2025 U.S. Dist. LEXIS 157214, at *16; *Jimenez*, 2025 U.S. Dist. LEXIS 176165, at *22 ("Because § 1225(b)(2)(A) applies to applicants for admission who are seeking to enter the United States, it cannot apply to

[Petitioner], who has already entered the country and has been residing here for over two years.").

"[T]he plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." *Gomes v. Hyde*, No. 25-11571, 2025 U.S. Dist. LEXIS 128085, at *19-20 (D. Mass. July 7, 2025); *see Martinez*, 2025 U.S. Dist. LEXIS 141724, at *8. "In reaching this conclusion, it is unnecessary to define the precise outer boundaries of when mandatory detention under § 1225 applies because it clearly does not apply to someone who has resided in the country for two years like [Petitioner]." *Benitez*, 2025 U.S. Dist. LEXIS 157214, at *15.

Respondent's reading of § 1225 would also render redundant § 1226(c)'s mandatory detention provision applicable to persons who have committed certain crimes. As Petitioner points out, that would also mean Congress's enactment of the Laken Riley Act earlier this year to amend § 1226(c) would be entirely meaningless because § 1225 mandatory detention would apply to all aliens, regardless of whether they have

committed an enumerated crime or not. Doc. 1 ¶ 56; Laken Riley Act of 2015, Pub. L. No. 119-1, 139 Stat. 3 (codified as amended at 8 U.S.C. § 1226(c)). Given all of this analysis, it becomes evident that the reasoning of *Hurtado* is mistaken.

Thus, the Court should hold that Petitioner cannot be held under the authority of § 1225. Instead, her current detention fits squarely under § 1226(a). She entered the United States without inspection in 2022 and has lived in the United States for more than three years. Doc. 1 ¶ 22. ICE issued her a Form I-220A in October 2022, releasing her on her own recognizance pursuant to § 1226(a). Doc. 1-5. That is significant—mere days after her entry to the U.S., ICE had already recognized that she was no longer "seeking admission" as described in § 1225, and itself applied the provisions of § 1226 and released Petitioner. She was not detained for removal proceedings upon entry into the United States under § 1225(b)(2)(A). It was not until after DHS's own IJ had held a hearing and made independent findings that Petitioner had proven, by clear and convincing evidence (8 C.F.R. § 236.1(c)(3)), that she does not present a danger nor a risk of flight, that the government changed its interpretation of the statutes and denied her release. Under all these

circumstances, and because Petitioner is an "alien . . . arrested and detained pending a decision on whether [she] is to be removed from the United States,"  (§ 1226(a)), the Court should hold that she is being held subject to the provisions of § 1226(a), not § 1225(b)(2)(A).

### 2.    *Petitioner's detention has become unconstitutionally prolonged.*

Finally, the Court should find that Petitioner's continued detention has become unconstitutionally prolonged, which would be true regardless of whether Petitioner is being held under § 1226(a) or § 1225(b)(2)(A).

Even in cases where the INA mandates detention, the Third Circuit has recognized that, "At a certain point, . . . continued detention becomes unreasonable and . . . unconstitutional unless the Government has justified its actions at a hearing." *Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209 (3d Cir. 2020), citing *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232 (3d Cir. 2011).

In the Third Circuit, claims that immigration detention has become unreasonably prolonged are evaluated with a non-exhaustive, four-factor test. Courts are required to consider: 1) the duration of detention; 2) whether the detention is likely to continue; 3) reasons for delay; and 4) whether the alien's conditions of confinement are meaningfully different

from criminal punishment. *Santos*, 965 F.3d at 211. "Reasonableness is a highly fact-specific inquiry." *Id.* (citation modified).

First, "The most important factor is the duration of detention." *Id.* "[D]etention 'becomes more and more suspect' after five months," though the Court of Appeals has declined to set a bright-line threshold. *Id.*, quoting *Diop*, 656 F.3d at 234. Here, Petitioner has been detained for over fifteen months. Doc. 1 ¶ 25. That is nearly three times longer than the six months that the Supreme Court previously upheld as only "somewhat longer than the average." *Id.* at 212, citing *Demore*, 538 U.S. at 530-31. And it is longer than the six months to one year timeframe that the Third Circuit held violated due process, compelling the Court to order a bond hearing in *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015) ("[S]ometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez-Alvarez had been detained for one year, the burdens to Chavez-Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute."). Thus, the first factor weighs in Petitioner's favor. *Accord*, *Bah v. Doll*, No. 18-1409, 2018 U.S.

Dist. LEXIS 190558, at *21 (M.D. Pa. Oct. 16, 2018) (detention of 14 months weighs in favor of relief at first factor).

Second, the Court considers "whether the detention is likely to continue. . . . When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Santos*, 965 F.3d at 211; *see also Chavez-Alvarez*, 783 F.3d at 477-78. Here, the Respondent argues that because "Petitioner's appeal at the BIA has been pending several months," and if affirmed, would leave only a "petition for review with the Third Circuit," this means that "her future detention is unlikely to be prolonged." Doc. 12 at 30 n.8. It is unclear how the Respondent draws such a confident conclusion without knowing how long those two appeals might last. Indeed, Petitioner reports, and Respondent does not contest, that though she filed notice of appeal in July 2025 (Doc. 1-19), BIA has yet to even issue a briefing schedule. Doc. 1 ¶ 63. Courts in this district have, in similar circumstances, weighed the second factor in favor of a petitioner where "all that can be said with certainty is that additional delay of an undefined duration will continue to accrue pending a ruling by the court of appeals, and any further administrative proceedings that may be

necessary following that appellate court decision." *Bah*, 2018 U.S. Dist. LEXIS 190558, at *21; *see also Vega v. Doll*, No. 17-1440, 2018 U.S. Dist. LEXIS 116307, at *29 (M.D. Pa. July 12, 2018), *report and recommendation adopted*, No. 17-1440, 2018 U.S. Dist. LEXIS 133797 (M.D. Pa. Aug. 8, 2018). Petitioner's proceedings are also "unlikely to end soon," so the second factor also weighs in her favor.

Third, the Court looks at the reasons for the delay thus far in the proceedings, including requests for continuances and whether "either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay.'" *Santos*, 965 F.3d at 211, quoting *Diop*, 656 F.3d at 234. The Third Circuit explains:

> [W]e do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings. Doing so, and counting this extra time as reasonable, would effectively punish an alien for pursuing applicable legal remedies. Nor do we hold the agency's legal errors against the Government, unless there is evidence of carelessness or bad faith. That said, detention under § 1226(c) can still grow unreasonable even if the Government handles the removal proceedings reasonably.

*Id*. (citations modified). Here, there is no evidence that Petitioner caused any undue delay, and Respondent concedes that "her proceedings

progressed at a normal rate." Doc. 12 at 29-30. So, the third factor cannot weigh against Petitioner.

The analysis of the government's conduct in the underlying proceeding is not as clear. With respect to the merits of the issues before the IJs and BIA regarding whether Petitioner may be granted asylum or a T visa, or whether she is to be removed, there is neither allegation nor evidence that the government acted with either "carelessness or bad faith." *Santos*, 965 F.3d at 212. But the government litigated Petitioner's detention under § 1226 at the start, then switched horses midstream and appealed to BIA to apply § 1225(b)(2)(A), relying, at first, only upon the Interim Guidance memo. *See* Doc. 1 ¶ 59. The undersigned cannot determine from the record before it whether DHS's reinterpretation of those statutes was carried out in good faith, or in an arbitrary and capricious manner to impose detention without review on individuals who should have been afforded at least an opportunity to obtain release on bond. And here, where DHS's own IJ found that the Petitioner did not present a danger or a risk of flight, that reinterpretation rings all the more hollow. Conversely, it is unclear from the record before the Court whether the government's changing positions on detention added to any

delay in the proceedings. It is a close call, but the Court should allow the Respondent the modest benefit of a slim doubt, and find that the third factor does not weigh in favor of either party.

Finally, the Court must consider whether Petitioner's conditions of confinement are meaningfully different from criminal punishment. *Santos*, 965 F.3d at 211. Here, they are not; they are exactly the same as criminal punishment.

Removal proceedings are civil, not criminal. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As such, if an alien's civil detention "looks penal, that tilts the scales toward finding the detention unreasonable." *Santos*, 965 F.3d at 211, citing *Chavez-Alvarez*, 783 F.3d at 478. "And as the length of detention grows, so does the weight that we give this factor." *Id.* Respondent concedes that this factor weighs in favor of Petitioner. Doc. 12 at 30 n.9. Indeed, as in *Santos*, "[d]espite its civil label, [her] detention is indistinguishable from criminal punishment. . . . Those conditions strongly favor a finding of unreasonableness." *Santos*, 965 F.3d at 213. Here, Petitioner is confined at Clinton County Correctional Facility alongside criminal defendants and inmates. She lives in a prison cell,

within a prison. Her detention does not merely "look penal," it is penal. This factor emphatically weighs in favor of Petitioner.

Petitioner has been detained for fifteen months, "an unreasonably long time, and there is no end in sight. All the while, [she] has been in prison." *Id.* at 213; *see also C.B. v. Oddo*, 2025 U.S. Dist. LEXIS 208250, at \*19. Accordingly, with three of the *Santos* factors in Petitioner's favor and one neutral, the Court should find that Respondent's detention of Petitioner has become unconstitutionally prolonged. *Santos*, 965 F.3d at 207.

### 3. *The Court should grant relief.*

Most of the cases reviewing the application of *Hurtado* have involved detainees who were never afforded a bond hearing, and thus those courts, in fashioning relief, ordered a bond hearing. At least one court, after finding that detention of a petitioner under § 1225(b)(2)(A) was unlawful, ordered immediate release and permanently enjoined the government from re-detaining him under § 1225. *Soto*, 2025 U.S. Dist. LEXIS 207818, at \*22. In that case, the District of New Jersey court reasoned that because "Respondents have not argued in the alternative that Petitioner should be detained under § 1226(a), the Court cannot

construe the record to authorize his continued detention on that basis."
*Id.* The court further ordered that, "Should Respondents elect to later
detain him under § 1226(a) and fail to provide him with a timely bond
hearing, at which an [IJ] assesses whether he is a danger or a flight risk,
Petitioner may move to reopen" his habeas case. *Id.*

The case before this Court presents a different scenario. Here,
Respondent does argue in the alternative that, in the event the Court
finds § 1225 does not apply and that Petitioner is instead detained under
§ 1226, she should nonetheless remain detained because her detention
"has not been prolonged or arbitrary." Doc. 12 at 29. As explained above,
Petitioner's detention has been unduly prolonged. But Respondent's
argument also forgets that, under § 1226(a), Petitioner cannot remain
detained because an IJ has already held that she satisfied her burden to
prove, by clear and convincing evidence, that she presents neither a
danger to persons or property nor a risk of flight. Docs. 1-14; 1-15 at 2-3.
Under these circumstances, continued detention, already unreasonably
prolonged, would also be arbitrary and contrary to the INA.

The only just outcome, therefore, given the totality of the
circumstances, would be to find that Petitioner is detained pursuant to

§ 1226(a); order Petitioner's immediate release; enjoin the government from re-detaining Petitioner under § 1225; and compel the government to abide by the procedural standards under the statutory provisions and regulations applicable to an individual released on bond under § 1226(a).

### 4.    *The Court should grant fees and costs.*

Finally, Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Respondent failed to oppose that request. Section 2412 provides, in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The "position of the United States" "means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based[.]" § 2412(d)(2)(D). To be eligible for fees under the EAJA, an applicant also must: (1) be a prevailing party; (2) submit a motion for fees within thirty days of final judgment; and (3) have a net worth less than

two million dollars at the time the civil action was filed. 28 U.S.C. § 2412(d)(1)(B), (d)(2)(B)(i).

Moreover, "[t]he EAJA provides that a prevailing party may recover 'costs' as enumerated in 28 U.S.C. § 1920." *Patel v. Att'y Gen. U.S.*, 426 F. App'x 116, 118 (3d Cir. 2011), citing 28 U.S.C. § 2412(a) (Section 1920 limits costs to such items as docket fees, fees for the clerk and marshal, and fees for photocopies). "Additionally, such party may be awarded 'fees and other expenses.'" *Id.*, citing 28 U.S.C. §2412(d)(1)(A). Courts have repeatedly granted fees under the EAJA in §2241 habeas actions challenging immigration-related detention. *See*, *e.g.*, *Sisiliano-Lopez v. Lowe*, 448 F. Supp. 3d 419, 428 (M.D. Pa. 2020) (granting fees of $12,033.75 in § 2241 challenge to prolonged immigration detention); *Ildefonso-Candelario v. Lowe*, No. 16-2120, 2017 U.S. Dist. LEXIS 163772, at *5 (M.D. Pa. Sep. 28, 2017); *Walker v. Lowe*, No. 15-887, 2016 U.S. Dist. LEXIS 143127, at *15 (M.D. Pa. Oct. 17, 2016); *Soriano v. Sabol*, No. 16-271, 2017 U.S. Dist. LEXIS 120431, at *25 (M.D. Pa. Aug. 01, 2017); *German Santos v. Warden Pike County Correctional Facility*, No. 19-2663 (3d Cir. Feb. 19, 2021) (docket entry 98) (approving the

parties' stipulation to award attorney's fees in the amount of $31,305.00 under the EAJA).

Initially, if the court adopts this Report and Recommendation, it follows that the Petitioner would be the prevailing party in this case, and thus she qualifies for an award of attorney's fees, expenses, and costs under the EAJA. *See Ildefonso-Candelario*, 2017 U.S. Dist. LEXIS 163772, at *5-6. Petitioner would be a prevailing party since she "has been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2002); *Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005); *Soriano*, 2017 U.S. Dist. LEXIS 120431, at *5. There can also be no dispute that Petitioner falls within the EAJA's financial limitation that precludes parties whose net worth exceeds $2,000,000 at the time the action was filed from recovery of fees. 28 U.S.C. §2412(d)(2)(B). *See* Doc. 1-3.

The undersigned finds no "special circumstances" that would "make an award unjust" under § 2412(d)(1)(A). Further, the government's position in this case was not substantially justified. In *Patel*, the Third Circuit noted that "[a] position is substantially justified if it is 'justified to a degree that could satisfy a reasonable person.'" 426 F. App'x. at 117

n.4, quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Also, "it is the Government's burden to demonstrate its position was grounded in a reasonable basis in fact and law with a reasonable connection between the two." *Id*. The court "do[es] not assume that the Government's position was not substantially justified simply because it lost on the merits." *Id*., citing *Kiareldeen v. Ashcroft*, 273 F.3d 542, 554 (3d Cir. 2001). Additionally, "[t]he Government's 'position' includes both the underlying agency action and its litigation position in the proceedings arising from that action." *Id*. at 117, citing *Johnson*, 416 F.3d at 210. "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. §2412(d)(1)(B).

Thus, "the government must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998). If the government does not meet its burden with respect to the

three-part criteria regarding both its litigation and pre-litigation positions, then its position is not substantially justified. *Elashi v. Sabol*, No. 9-2201, 2010 U.S. Dist. LEXIS 116443, at *6 (M.D. Pa. Nov. 2, 2010); (citing *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir.1993)). Additionally, the "EAJA is a waiver of sovereign immunity, however, so it must be construed strictly in favor of the United States." *Walker*, 2016 U.S. Dist. LEXIS 143127, at *7 n.13, citing *Clarke v. INS*, 904 F.2d 172, 175 (3d Cir. 1990).

To begin with, the Respondent was not substantially justified in holding Petitioner for fifteen months without bond. *See Sisiliano-Lopez* 448 F. Supp. 3d at 426 ("The Government therefore was not substantially justified in holding Sisiliano-Lopez after September 28, 2016—one year after he was initially detained pending removal from the country— without conducting a bond hearing."). "The relevant case law within the Third Circuit made clear that, regardless of what statute an individual is detained under during removal proceedings, the Due Process Clause is violated where that individual is detained for more than one year without a bond hearing." *Id.*, citing *Chavez-Alvarez*, 783 F.3d at 469. Here, while Petitioner did receive a hearing on bond, the IJ's order to grant bond and

release her was without effect, which is the same as having granted her no bond hearing.

Additionally, the government had no "reasonable basis in law for the theory it propounded," nor was there any "reasonable connection between the facts alleged and the legal theory advanced." *Perry*, 142 F.3d at 684. The holding of *Hurtado* and the government's reading of § 1225 were unreasonable. Indeed, *Hurtado* conflicts with decades of immigration precedent, both in practice and in administrative decisions, as well as with the plain language of the statute. The overwhelming number of district courts from multiple circuits rejecting *Hurtado* and the arguments presented here by the government further demonstrate how unreasonable they are. *See, e.g.*, *Ajqui v. Noem*, No. 5:25-cv-02976-FWS-PD, 2025 U.S. Dist. LEXIS 221702, at \*12 (C.D. Cal. Nov. 10, 2025), quoting *Valencia Zapata v. Kaiser*, 2025 WL 2741654, at \*10 (N.D. Cal. Sept. 26, 2025) ("[N]ot only does *Yajure Hurtado* merit little deference due to its inconsistency with earlier BIA decisions, but its reasoning is also at odds with the text of sections 1225 and 1226."). Respondent's own brief in response cited fifteen such cases, decided before Respondent filed their response—evidence that they were fully aware that courts around

the country found their arguments unreasonable and unjustified. In this case in particular, to apply *Hurtado* where the Petitioner had originally been detained under § 1226 and had been ordered released based on clear and convincing evidence that she was neither a danger nor a risk of flight, defies reason and borders on arbitrary and capricious. No reading of the plain language of § 1225 could lead a reasonable person to conclude that it applied to Petitioner.

Moreover, Respondent made a jurisdictional argument that has been rejected, repeatedly, by multiple courts in binding precedents. Respondent's argument that this Court lacks jurisdiction to review immigration detention under § 2241 rests on a statutory interpretation that the Supreme Court called "extreme" and "absurd," and said "would lead to staggering results." *Jennings*, 583 U.S. at 293. No reasonable person would advance such a baseless theory after it had already been soundly rejected by binding precedents; precedents cited by Respondent, though they did not mention (nor distinguish) the portions that negated their arguments.

Accordingly, the Court should grant reasonable attorney's fees, costs, and expenses as authorized, once Petitioner submits a schedule of fees and expenditures.

## IV.    RECOMMENDATION

Based on the foregoing, it is respectfully recommended that the Court:

1.  GRANT Petitioner's Petition (Doc. 1), and enter judgment for the Petitioner and against the Respondent;

2.  ORDER Respondent to treat Petitioner as being detained under 28 U.S.C. § 1226(a), and treat her accordingly until the end of her immigration proceedings;

3.  ORDER Respondent to release Petitioner immediately;

4.  ORDER Respondent not to re-arrest or detain Petitioner under 28 U.S.C. § 1225(b)(2)(A), permanently;

5.  ORDER that Petitioner is entitled to attorney's fees, costs, and expenses under the EAJA, and direct Petitioner to submit a request detailing qualifying fees, costs, and expenses within 30 days of final judgment;

6.  DIRECT the Clerk of Court to close this case.

### NOTICE

Further, given the unique circumstances of this case and the liberty interests at issue, the undersigned ORDERS that, notwithstanding Local Rule 72.3, any objections must be filed **no later than November 18, 2025**. The parties are further placed on notice that, pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: November 13, 2025       <u>s/ *Sean A. Camoni*</u>
Sean A. Camoni
U.S. Magistrate Judge